JAMES H. CLARK, APPELLEE, v. GEORGE A. CLARK ET AL., APPELLANTS.

1. **Trust:** EVIDENCE. In an action to establish a trust and for a decree quieting the title of certain lands in the plaintiff, *Held*, That a preponderance of the testimony established the trust, and that the plaintiff was entitled to the relief prayed for.

2. ———: DEFENSE: EVIDENCE. *Held*, That an allegation in the answer of certain defendants that a deed was obtained by fraud and misrepresentations, was not sustained by the evidence.

3. ———: LIMITATION. Where the statute of limitations has begun to run in favor of a *cestui que trust* it will not be suspended by the death of the trustee.

4. ———: ———. Where a *cestui que trust* is in possession of the trust property as his own, the statute of limitations will not run against him in favor of the trustee so as to bar his right to the property.

5. Action quia timet: MINOR HEIRS AS DEFENDANTS NOT LIABLE FOR COSTS. Where an action was brought against certain minor heirs and others to quiet the title of real estate in the plaintiff, the principal object of the action being to divest the title of the minor heirs, *Held*, That as such minor heirs were unable to convey by deed, they should not be taxed with the costs of the action, and that the relief will be granted to the plaintiff upon the payment of all costs.

APPEAL from the district court of Johnson county. Tried below before BROADY, J.

*C. M. Easterday* and *S. P. Davidson*, with *V. D. Metcalfe*, guardian *ad litem*, for appellants.

*C. E. White* and *T. Appleget & Son* (*Bingham, Mitchell & Batchellor*, of New Hampshire, with them), for appellee.

MAXWELL, CH. J.

In November, 1884, plaintiff filed his amended petition, stating his cause of action to be:

"That he is, and has been for about twenty years, the

owner and in possession of the north-east quarter of section five, town five, range ten, in Johnson county, Nebraska; that he purchased said land of one James Clark prior to the year 1866, for a valuable consideration; that on or about September 4, 1866, a deed to said land was made by said James Clark to one Albert W. Clark, a brother of plaintiff; that said deed, which is duly recorded in the records of deeds of said county, was made without consideration and with the purpose and intent of him the said James Clark, who at the time was old and infirm, that said land should be conveyed by said Albert W. Clark to the plaintiff, who was absent from the home of said parties in New Hampshire and engaged in business in Massachusetts; soon after the making of said deed, to-wit, March 27, 1867, said Albert W. Clark suddenly died; very soon after his death, Philinda G. Clark, his widow, at the request of James Clark and one Farr, a lawyer and near friend, deeded said land to plaintiff, acting for herself and as guardian of her three minor children, defendants; but said deed was not recorded and has since been lost; that plaintiff has been in continuous and undisputed possession of said land from 1866 to the present time and has paid all the taxes thereon since said date, amounting to about $400; that about March, 1883, defendants herein, the legal heirs of said Albert W. Clark, made a deed to this plaintiff for said land, understanding at the time that said deed was for the purpose of placing the legal title to said land of record in plaintiff; said deed is duly recorded in book "Q" of deeds for said county at page 388; that plaintiff claims title to said land in fee and defendants claim an estate or interest adverse to plaintiff which is without any right whatever, and that they have no interest or estate in said premises or any part thereof. Plaintiff prays that all adverse claims of defendants may be determined by decree of court; that said deed from James Clark to Albert W. Clark may be declared null and void; that by decree it be declared that defendants

have no estate or interest whatever in and to said land; that the title of plaintiff be declared good and valid; that defendants be barred from asserting any claim whatever to said lands adverse to plaintiff, and that plaintiff have general relief."

On motion of plaintiff V. D. Metcalfe was appointed guardian *ad litem* for defendants, George A. and Eva M. Clark, minors.

V. D. Metcalfe, guardian *ad litem* for said minor defendants, filed answer to amended petition and cross petition, by which he is joined by Philinda G. Clark, guardian and next friend of said minor defendants, in which they admit "that on or about September 4, 1866, said James Clark, the owner of the lands in controversy, conveyed the same to said Albert W. Clark by deed of that date duly executed and acknowledged and since recorded in Johnson county; that on or about March 27, 1867, said Albert W. Clark died; that all of the defendants are his legal heirs, and these answering defendants are minors of young and tender years, do not clearly know all their rights herein involved, and ask the court to fully protect their rights to the same extent as if they were fully set out and claimed; and they deny each and every other allegation in said amended petition contained.

"That said deed from James Clark to Albert W. Clark was made for and in consideration of full value paid to said James Clark by said Albert W. Clark, who was the father of the defendants, and at his death said Albert W. Clark was the owner and in possession of the lands in controversy.

"At the death of said Albert W. Clark one Charles H. Clark, his brother, was appointed administrator of his estate, and because defendants reposed confidence in him, he and said plaintiff were permitted to have the management of said lands with other lands in Gage county for the defendants herein ever since the death of said Albert W. Clark, and during that time they have collected for rent of said

lands $500; and for valuable timber thereon cut down and sold, $100; and for right of way across said land of the A. & N. railroad in 1872, $50, all of which sums said plaintiff has wrongfully converted to his own use.

"Defendants never saw said lands, and at all times prior to the commencement of this suit were entirely ignorant of the quality, location, surroundings, and value of the same, but plaintiff was well acquainted therewith, as well as the quality and value of said land in Gage county on and before March 8, 1883, when said plaintiff, for the purpose of cheating, defrauding, and circumventing said defendants, did falsely and fraudulently represent to defendants that all of said lands were wild, uncultivated, situated in an uninhabited wilderness, far removed from any settlements or markets, that they were of poor quality not worth to exceed $200, and that defendants held but a small undivided interest in all of said lands; all of which representations were false and untrue, as plaintiff well knew. Defendants, being entirely ignorant as to whether said representations were true or false, but relying thereon and being influenced thereby, were induced by said plaintiff to sign and deliver to him what purported to be a deed to all of said lands, including that of Gage county, for $200, and no more; but as defendants are informed said deed is not legally acknowledged, but plaintiff has caused the same to be spread upon the records of said Johnson county at page 388 of Book Q of Deeds.

"Since signing said papers these defendants have learned and aver the facts to be that they each own one-third interest in said lands in controversy, subject to the dower of defendant, Philinda G. Clark, and one-fourth of the land in Gage county; that plaintiff has no interest therein whatever; that said land in Gage county is adjacent to the city of Beatrice and is very valuable; that the land in controversy lies within two miles of a railroad station, in a thickly settled neighborhood; that a large portion of it has

been under cultivation for twenty-six years, that a portion of the balance was valuable timber land, and that said land is of a very superior quality, that a fourth of said land in Gage county, on March 8, 1883, was worth not less than $1,000, and the land in controversy was then worth not less than $3,500, all of which facts plaintiff then well knew, but defendants were entirely ignorant thereof.

"At the time said deed was signed these answering defendants were minors, and they now disaffirm, renounce, and repudiate the same and charge that the same was procured from them by fraud and circumvention and by false and fraudulent representations of said plaintiff. The one-fourth interest in said lands in Gage county was then worth a great deal more than said two hundred dollars, the consideration of said deed, and the amounts received by said plaintiff for rent, for timber and for right of way as above mentioned largely exceed the amounts paid out by him for taxes.

"Defendants deny that plaintiff has ever been, or claimed to be, in possession of said land adverse to any of said defendants until about the time of the commencement of this suit, and during all the time from March 27, 1867, till the commencement of this suit he fraudulently concealed from defendants the character, condition, surroundings, and value of said lands, the amount he was receiving as rent therefrom, and the interests of defendants therein.

"2d. As a second and further defense defendants aver that the cause of action sued on did not accrue within ten years next prior to the commencement of this suit; and the same had long theretofore been barred by the statute of limitations. Defendants pray that said deed recorded in book Q, page 388, be delivered up and cancelled, that the same be discharged from record, the cloud occasioned thereby upon defendants' title be removed, that the title of each of these defendants to the undivided one-third of said land in controversy, subject to Philinda G. Clark's dower, be quieted

and confirmed in each of them, that plaintiff's petition be dismissed, and that defendants have general relief."

On same day defendants Philinda G. Clark and Israel J. Clark filed their answer, making substantially the same averments and denials therein as those contained in the answer of the other defendants above mentioned, and specially denying that plaintiff ever was the owner of the lands in controversy or was ever in possession of the same adverse to defendants, until about the time of the commencement of this suit; and denying that in the year 1867, or at any other time, Philinda G. Clark, acting for herself and as guardian for her minor children, ever deeded said land to plaintiff, and averring that defendant, Israel J. Clark, became of age May 27, 1881, and that defendants, Eva Clark, and George A. Clark are still minors, and making substantially the same prayer as that made by the other defendants, and in addition asking that the right of dower in said lands of defendant, Philinda G. Clark, be declared and confirmed to her.

The reply is substantially a general denial, with the additional averment that defendants' claim is barred by the statute of limitations.

On the trial of the cause in the court below, a decree was rendered in favor of the plaintiff, quieting and confirming the title of the land in question in him, and taxing all the costs, including the fee of the guardian *ad litem*, against the defendants. The defendants appeal.

It appears from the testimony that in the year 1863, one Leroy C. Clark was possessed of the lands in controversy, and also of certain lands in Gage county. He died in that year, leaving a widow, but no children. Under the statutes of this state, such lands, subject to the life estate of the widow, descend to the father of such decedent. An adjustment was made between the widow and the father of the deceased by which she conveyed to him her interest in the lands in controversy, and he seems to

have conveyed to her his interest in certain lands in Gage county.

In September, 1866, James Clark, the father of Leroy Clark, conveyed to Albert W. Clark the lands in question by a special warranty deed. The plaintiff claims that this conveyance was made in trust for him, and his right to recover in this action depends upon the establishment of the trust. The testimony shows that the plaintiff and one Charles H. Clark are also sons of James Clark. In 1867, Albert W. Clark died suddenly. At the time of the conveyance from James Clark to Albert W. Clark, the plaintiff was a resident of Lynn, Massachusetts, and was engaged in business there; and one of the witnesses swears that he was "not meeting with very good success."

His father, James Clark, and Albert W. Clark, were at that time residing in New Hampshire, and the plaintiff does not seem to have met Albert W. after the execution of said deed. There is a large amount of testimony tending to show that the plaintiff paid his father the consideration for the land conveyed to Albert W., and that the said land was conveyed to Albert W. in trust for the plaintiff.

There is testimony also tending to show that Albert W. admitted that he held the lands in trust for his brother James H., and that after the death of Albert W., James Clark, the father, the plaintiff, Charles H. Clark, and Philinda G. Clark, the widow of Albert W., went to one Farr, an attorney, who was at that time counsel for said Philinda G. Clark, telling him the circumstances. He advised her to deed the land to the plaintiff for herself, and as guardian for her children. This the plaintiff claims she did. The deed, however, if made, was not recorded, the reason given by the plaintiff for not recording the same being, "I retained this deed and did not record it because I consulted other counsel and found it was not sufficient to pass the title to me." In 1868, James Clark died. In August, 1883, certain depositions were taken at the office

of Bingham, Mitchell & Batchellor, a law firm at Little-
ton, New Hampshire, before one E. C. Steveans, a no-
tary public, to which depositions the deed, purporting to
have been made by Philanda G. Clark to plaintiff, was
attached.   E. C. Steveans testifies as follows: "I was the
notary who wrote the deposition above mentioned by Mr.
Batchellor.   The deed was given to me to be annexed to
the deposition.   It was in the handwriting of E. W. Farr,
from Philinda G. Clark and her children to James H.
Clark, of lands in Johnson county, Nebraska.   It was so
annexed and mailed by me to the clerk of the district of
Johnson county, Nebraska."   In this he is corroborated
by one A. S. Batchellor, a member of the law firm here-
tofore referred to, at whose office the deposition was taken.

There is no evidence that this deposition containing the
deed in question was ever received by the clerk of the
district court of Johnson county, his testimony being: "I
do not remember what depositions were received and filed
in the case of Clark v. Clark during that time (in 1883).
I do not find any such depositions now.   My term expired
in January, 1884.   The fee-book does not show the filing
of any such depositions.   As a matter of fact I was not
in the habit of entering depositions in this book or on the
appearance docket at the time of receiving them.   Upon
examination of appearance docket, I cannot say whether
I filed any depositions in this case."

Mary Jane Richardson, a sister of the plaintiff, testifies:
" I reside at Littleton; the plaintiff is my brother.  I had a
brother, Leroy, who owned land in Nebraska and died there;
he had no children.  My father and his wife settled up about
the property.  He said he wanted J. H. Clark to have this
land.   J. H. Clark was away at this time, and he deeded
the land to the Doctor with the intention to deed it to J.
H. Clark.   The Doctor never paid anything for the land.
The family all knew why it was deeded to him.   After
the doctor died, my father, Henry, and Philinda said they

had fixed it all right. She always called it Henry's land. I never heard it mentioned that she had a dollar there for herself or children until within two years.

"There was two pieces of land above mentioned, one piece called the forty-acre parcel in Beatrice, and the larger piece was in Gage county. I cannot tell whether both pieces were in the same county or not."

### CROSS-EXAMINATION.

"The only reason I know of why the land was not conveyed directly from father to Henry was, Henry was not here. I could not tell how much Henry paid father for the land. It was not considered very valuable then. I think a part was paid before and a part after the.deed to the Doctor. I could not tell how long before the conveyance to the Doctor; the bargain was made and part of the money paid. I don't know that I ever saw a dollar pass, but I have heard my father say he paid him. I have seen him pay my mother. I do not know how I knew the money was intended as part consideration for the land, only I know it."

The only testimony that tends to show that A. W. Clark paid anything for this land is that of his widow, Philinda G. Clark, who testifies that: "My husband sent money out to pay for it. This I know of my own knowledge, though I was not present when he deposited it in the office to send to his brother. It was one or two years previous to the war of the rebellion that my husband raised the money about which I have testified."

In this she is directly contradicted by the widow of Leroy C. Clark, a disinterested witness, who testifies that: "He (Leroy C. Clark) purchased these lands and paid the consideration himself. Albert W. Clark had nothing to do with the purchase of these lands." A clear preponderance of the testimony, therefore, establishes the fact that the plaintiff paid the consideration for this land, and that it was held in trust by A. W. Clark as trustee for him.

In 1883, the defendants executed a conveyance of the lands in controversy to the plaintiff, and their mother was paid the sum of $200 for the same. One of the children, Israel, was more than twenty-one years of age at the time of executing this conveyance. The defendants assert that this conveyance was obtained by means of fraudulent representations by Charles H. Clark. This Charles H. Clark denies. So far as the testimony shows, he was and is a disinterested party. He had been the administrator of the estate of Albert W. Clark, and so far as it appears, had performed his duty to the satisfaction of the defendants.

Considerable time had been spent in 1883 in conducting the negotiations, and the defendants evidently were in possession of the principal facts of the case before executing the deed of that date. During the summer of 1883, George A. Clark, one of the minor defendants, spent several weeks on a visit at the home of his uncle Charles H. Clark, which, if the alleged fraudulent conduct of the uncle was true, he probably would not have done. In our view, therefore, the testimony fully justifies the court below in finding, as it must have done, that the deed given plaintiff by defendants in 1883 was not obtained by fraud.

There is some testimony tending to show that the plaintiff took possession of this land about the year 1864, and has retained possession from that time till the present; that he has paid the taxes on the land and received the rents and profits therefrom. The plaintiff contends that if the statute of limitations had commenced to run in his favor before the death of A. W. Clark, that such statute would continue to run in his favor notwithstanding such death; that is, if the statute has begun in favor of the *cestui que tvust* during the life of the trustee, it will not be suspended by his death. *Wooldridge v. Planters' Bank,* 1 Sneed., 297. *Worthy v. Johnson,* 10 Ga., 358. *Williams v. Otey,* 8 Humph., 563. *Long v. Cason,* 4 Rich. Eq., 60. *Pulteney v. Warren,* 6 Ves., 73. *The East Indian Company v. Cam-*

*pion,* 11 Bligh, 158, 186, 187.    *Williams v. Presbyterian Society,* 1 Ohio Stats., 478.

It is claimed on behalf of the defendants that the statute of limitations has run against the plaintiff in their favor, more than ten years having elapsed since the creation of the alleged trust.    No case has been cited showing that the statute of limitations would run against the *cestui que trust* in possession of the trust property, and bar his right to the same in favor of the naked trustee.    The statute of limitations does not begin to run against a *cestui que trust* in possession in favor of the trustee until after the trustee has disavowed the trust.    *Williams v. Presbyterian Society,* 1 Ohio State, 478.    *Willison v. Watkins,* 3 Peters, 48. "The same principle (that governing landlord and tenant) applies to mortgagor and mortgagee, trustee and *cestui que trust,* and generally to all cases where one man obtains possession of real estate belonging to another, by a recognition of his title."    The statute therefore forms no bar.

The court below taxed all the costs to the defendants, including the fee of the guardian *ad litem,* although he was appointed on the plaintiff's motion.    The principal ground of the action is to obtain a title from the minor heirs, and as they were unable to convey by deed they should not be subjected to costs.    All the costs in the case, therefore, including the fee of the guardian *ad litem,* will be taxed against the plaintiff in the case, and as thus modified the judgment of the court below is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.