[No. 1383.   December 8, 1911.]

EDGAR ANDREWS, Appellant, v. THE RIO GRANDE LIVESTOCK COMPANY, W. R. THOMAS and R. B. THOMAS, Appellees.

### SYLLABUS.

1. A purchase by a tenant of an adverse title, claiming under or attorning to it, or any other disclaimer of tenure with the knowledge of the landlord, was a forfeiture of his term; that his possession became so adverse, that the act of limitation would begin to run in his favor, from the time of such forfeiture; and the landlord could sustain ejectment against him without notice to quit.

2. If there is no privity between the cestui que trust and the trustee, if the cestui does not hold under the title of the trustee, he can hold adversely to the trustee. His possession of the trust estate must be in subserviency to the legal title and being in recognition of it, his possession of the land enures to the title under which he claims.

Appeal from the District Court for Santa Fe County, before JOHN R. McFIE, Associate Justice.   Reversed.

A. B. RENEHAN for Appellant.

Statute of Limitations. Laws 1899, chap. 63, sec. 2.
A void or voidable deed may constitute color of title. Wright v. Mattison, 18 How. 280; U. S. v. Casterlin, 164

Fed. 437; Grain Co. v. Crabtree, 166 Fed. 738; Lee v. Copper Company, 21 How. 206; Landes v. Bryant, 10 How. 459; Ellicott v. Pearl, 9 How. 475; Hall v. Law, 12 Otto 217; Schrimpscher v. Stockton, 183 U. S. 205; 2 Enc. L. & P. 512-516; Pike v. Evans, 94 U. S. 41; McIntyre v. Thomson, 10 Fed. 531; Coal Co. v. Wiggins, 68 Fed. 446; Packard v. Moss, 68 Cal. 123; 74 Cal. 17; Kendrick v. Latham, 25 Fla. 820; Wade v. Garrett, 109 Ga. 270; Fritz v. Joiner, 54 Ill. 101; Jackson v. Magruder, 51 Mo. 55; Davis v. Burroughs, 8 N. Y. S. 379; LaFrombois v. Jackson, 18 Am. Dec. 463; Gourdin v. Davis, 45 Am. Dec. 745; 2 Enc. L. & P. 59.

Actual possession by pretender to title or holder of paper evidence thereof is not required, but actual possession by his tenant or representative will suffice. Clift v. White, 12 N. Y. 519; Walker v. McCusker, 71 Cal. 594; Lightbody v. Treelson, 39 Minn. 310; Woolsey v. State, 17 S. W. 546; Webster's Dictionary; Bouvier Law Dictionary; Dixon v. Ahern, 14 Pac. 598; Adams v. Gilchrist, 63 Mo. App. 639; Gregg v. Forsyth, 24 How. 179; Bell v. Coke Co., 155 Fed. 712; Scaife v. Land Co., 90 Fed. 238; Treece v. American Assoc., 122 Fed. 598; Murphy v. Commonwealth, 187 Mass. 361; Heinemann v. Bennett, 144 Mo. 113; Hassett v. Ridgley, 49 Ill. 197; Holtzman v. Douglas, 168 U. S. 466; 2 Enc. L. & P. 379.

The payment of taxes is sufficient evidence of good faith. 2 Enc. L. & P. 409; Gottlieb v. Thatcher, 51 Fed. 373; Sexon v. Baker, 172 Ill. 365; Floyd v. Ricketson, 129 Ga. 676; Lee v. O'Quinn, 103 Ga. 355; Brady v. Walters, 55 Ga. 25; Stubblefield v. Borders, 92 Ill. 280; Foulke v. Bond, 41 N. J. L. 528; Severson v. Gremm, 124 Iowa 729; De Foresta v. Gast, 20 Colo. 307.

Continuity is an element of adverse possession. 2 Enc. L. & P. 439.

A conveyance by a trustee to the cestui que trust merges the title and determines the trust. 2 Perry on Trusts, sec. 921; 28 A. & E. Enc. 933; 1 A. & E. Enc., 2 ed. 842; 1 Perry on Trusts, secs. 13, 14.

A resulting trust may be established by parole. 2 Perry on Trusts, secs. 139, 143.

Adverse possession by a tenant may be established by a disclaimer. Bergere v. Chaves, 14 N. M. 352; 2 Enc. L. & P. 468-471; Willison v. Watkins, 3 Pet. 598.

Notice to the agent is notice to the principal. Mechem on Agency, sec. 718; 1 Perry on Trusts 321; 29 Cyc. 1113.

FRANK W. CLANCY for Appellees.

Character of possession necessary to show title. Laws 1899, chap. 63, sec. 2; 1 Cyc. 997; Thompson v. Pioche, 44 Cal. 508; Ward v. Cochran, 150 U. S. 608; Harvey v. Tyler, 2 Wall. 349; Sharon v. Tucker, 144 U. S. 541; Kincheloe v. Tracewell, 11 Gratt. 605; Probst v. Presbyterian Church, 129 U. S. 190; Jackson v. Porter, 13 Fed. Cas. 238; Bowman v. Lee, 48 Mo. 336; Bracken v. Railway Co., 75 Fed. 349; Colvin v. Land Assn., 23 Neb. 75; Smith v. Burtis, 9 Johns. 180; Bedell v. Shaw, 59 N. Y. 50; Schleicher v. Gatlin, 85 Tex. 272; Colvin v. Burnett, 17 Wend. 569.

## STATEMENT OF FACTS.

Suit was instituted by the appellant, in the district court of Santa Fe county, on March 2, 1908, to quiet title to the north half of the northeast quarter of section 17, in township 15 north of range 8 east, against the appellees, and for injunctive relief and damages. The defendants filed an answer, denying appellants' allegations of ownership of the tract in question; alleged that appellant was in possession of some part or parts of the land in controversy, but denied his possession of all; denied adverse possession by appellant for ten years. The appellee company also counterclaimed, alleging title in itself, and asked to have its title quieted against the appellant. Upon issue joined the cause was tried by the court, and at the termination of appellants' evidence in chief, upon appellees' motion for a non-suit, the issues were found in favor of the appellees and a final decree was entered dismissing the complaint, from which judgment this appeal was prosecuted. The facts disclosed by the evidence, so

far as they are material to a decision of the controverted questions, may be briefly summarized as follows: The Bonanzas Mining Company, for many years prior to October 20, 1897, had been in possession of about twenty-five acres of the tract in question, under a claim of ownership. In 1889, the company leased the twenty-five acre tract to John Andrews, the uncle of appellant, who entered into possession of it. A short time after the entry by John Andrews, the appellant joined him. and the two men continued to occupy the land under the John Andrew's lease. For the first few years of the tenancy some rent was paid to the Bonanzas Company. It appears that for some years prior to 1896 no rent was paid by the Andrews', but they recognized the tenancy until 1897. In October, 1897, the sheriff of Santa Fe county, on execution issued against John Gwyn, who was at that time one of the holders of the paper title from the United States Government, sold the whole of the eighty acre tract, at public auction, to Ed. Bennett, for the use, however, of John Andrews and the appellant, and this fact was announced publicly at the sale by the sheriff in the presence and hearing of the duly authorized agent of the Bonanzas Mining Company, also John Andrews and several other parties. After the sale, the sheriff again informed the agent of the Bonanzas Mining Company that the land had been sold to Ed. Bennett for John and Edgar Andrews. Shortly after the sale the sheriff, at the request of the Andrews', executed a deed for the property to Fritz Muller, the uncle of the appellant. The consideration for the deed was paid to the sheriff by the Andrews'. The title to the property, acquired by the sheriff's deed, remained in Muller until 1903, at which time he conveyed it to Edgar Andrews at the request of John Andrews, made prior to the death of John Andrews in 1901. Muller testified that he held the land for the use and benefit of John and Edgar Andrews; that the consideration for the sheriff's deed was paid by John Andrews and that the Andrews' paid the taxes or reimbursed him for the taxes paid on the land in question. After he conveyed the land to Edgar Andrews the tax receipts introduced in evidence show

that Edgar Andrews paid the taxes and that the land was assessed in his name. It was admitted by the appellant, in the lower court, that the sheriff's deed to Fritz Muller was void, because of irregularities, which need not be set out, as it was conceded by the appellee that the deed, though void, would constitute color of title, but they contended that the possession of Andrews', from 1897 to 1903, was not under color of title; that such possession was not possession by Muller under his color of title and that the ten year period fixed by the statute of limitations had not run at the time the suit was instituted.

## OPINION OF THE COURT.

ROBERTS, A. J.—Appellant claims title to the real estate in question under and by virtue of Section 2, Chapter 63, of the Acts of the Legislature of 1899, which provides: "No person or persons, nor their children nor heirs, shall have, sue or maintain any action or suit. either in law or in equity, for any land, tenements or hereditaments, against any one having adverse possession of the same. continuously in good faith, under color of title, and who has paid the taxes lawfully assessed against the same, but within ten years next after his, her or their right to commence, have or maintain such suit shall have come, fallen or accrued, and all suits, either in law or in equity, for the recovery of any lands, tenements or hereditaments so held shall be commenced within ten years next after the cause of action therefor has accrued." There is no dispute but that appellant has resided upon the land for much longer than the ten year period; but the appellees contend, and the lower court upheld this contention. (1st) that from 1897 to 1903, appellant and his uncle, did not hold the land adversely, but held the same in subserviency to and under the claimed title of the Bonanzas Mining Company, as their tenants, and (2nd) that Andrew's possession from 1897 to 1903 was not under the color of title held by Muller under the sheriff's deed; in other words, that the possession and occupancy of land by a cestui que trust, would not enure to the paper title, standing in the name of the trustee. It appears from the

evidence, and is referred to in the opinion of the lower court, copied into the transcript, that a man named Nasario Gonzales claimed title to a portion of the eighty acres in dispute, but we apprehend that this fact did not influence the court to enter the judgment of non-suit, for the reason that, even if true that appellant had not established his title by adverse possession to the whole of the eighty acres, if he had so. established his title to a portion of the tract, the court would have proceeded with the cause and would have quieted his title to that portion of the tract which the evidence disclosed he was entitled to.

1. The solution of the first proposition depends upon whether the facts occurring, at the sale of the property by the sheriff, in 1897, and the continued occupancy and cultivation of the land by Andrews, was a sufficient renunciation and disclaimer of the title of the landlord, under which Andrews had theretofore held the land, to set the statute in motion. In the case of Willison v. Watkins, 3 Pet. 44, the Supreme Court of the United States considered and declared the law to be settled, that a purchase by a tenant of an adverse title, claiming under or attorning to it, or any other disclaimer of tenure with the knowledge of the landlord, was a forfeiture of his term; that his possession became so adverse, that the act of limitation would begin to run in his favor, from the time of such forfeiture; and the landlord could sustain ejectment against him without notice to quit. This case has since been repeatedly cited, with approval, by that and other courts. The appellee is not claiming under or in privity with the title of the Bonanzas Mining Company, the landlord, and the Bonanzas Mining Company is not asserting the tenancy, but appellee is relying upon the relationship of landlord and tenant between appellant and a third party to prevent the statute from running against it. We think the facts sufficient to set the statute running against the landlord and all other claimants or owners. The agent of the Bonanzas Company was present at the sheriff's sale. Andrews and several other parties were also present. The sheriff announced that he had sold the property to Ed. Bennett for

Andrews; the agent of the landlord heard the statement made, and, as Andrews was present, heard . the statement made, apparently understood it,. by his silence acquiesced in it. Had the statement been untrue the ' circumstances certainly called for a denial on his part, which was not made. Later, the sheriff again told the agent of the Bonanzas Company that Ed. Bennett purchased the property for Andrews. Thereafter, no rent was paid or tendered by Andrews to the landlord; no act was done by him which could in any way be construed as an admission of the title of the landlord. He used the premises as his own, repaired buildings and fences and cultivated the fields. Had Andrews taken the deed in his own name; had he himself been the bidder and purchaser at the sale, certainly there could be no dispute as to his renunciation of the title of his landlord, and we cannot see how the fact that the bid was made by a third party for Andrews, all of which was known to the landlord, and the title was taken in some other name, for his use, can alter the case. We think the facts sufficiently establish the renunciation of the landlord's title and were sufficient to set the statute in motion.

2. The second proposition presents more difficulties. No cases have been cited by counsel on either side where the question has ever been expressly decided by any of the courts. It is admitted by counsel for appellee that Fritz Muller, in whose name the sheriff's deed was taken, was a trustee and that Andrews was the cestui que trust and in possession of the real estate, but he contends that the possession by the cestui que would not enure to the legal title held by the trustee; in other words, that his possession would not be under color of title. Counsel for appellee admits that the holder of the color of title' may perfect his title by adverse possession where the premises have been occupied by his tenant and this proposition is not subject to dispute. He also admits that it might be true that the possession of a cestui que trust, under an express trust,' would enure to the legal title. In Love v. Watkins, 40 Cal. 547, the court, speaking of resulting trusts, says: "The only respect in which this trust differs

from an express trust, is as to the mode in which it is established or proven." In the case now before the court the trustee carried out the trust, without the necessity of a resort to the courts by the cestui. He acknowledged the trust, and conveyed the property to the beneficiary. The only necessity of proving the trust in the present case was to establish the relations of the parties relative to the real estate in controversy. Suppose Fritz Muller had taken the title for his own use, and had leased the land by parole to Andrews, can it be insisted that the parole lease could not have been established by the testimony? Would not the occupancy of the land by the tenant have enured to the title held by Muller? We do not believe that the relations between the parties in this case would have been altered, had the trust been an express trust. In the case of Lewis v. Hawkins, 23 Wall. 199, the court, in discussing the statute of limitations as between trustee and cestui que trust, says: "A cestui que trust cannot set up the statute of limitations against his co-cestui que trust, nor against his trustee. These rules apply to all cases of express trusts. 'As between trustee and cestui que trust, an express trust, constituted by the act of the parties themselves will not be barred by any length of time, for in such cases there is no adverse possession, the possession of the trustee being the possession of the cestui que trust.' The same principle applies where the cestui que trust is in possession. He is regarded as a tenant at will to the trustee." If there was no privity between the cestui que trust and the trustee, if the cestui did not hold under the title of the trustee, certainly he could hold adversely to the trustee. His possession of the trust estate must be in subserviency to the legal title, and being under the legal title and in recognition of it, his possession of the land would enure to the title under which he claimed. The same principle (that governing landlord and tenant) applies to mortgagor and mortgagee, trustee and cestui que trust, and generally to all cases where one man obtains possession of real estate belonging to another by recognition of his title. Clark v. Clark, 21 Neb. 402. After the sheriff's sale Andrews was in possession of the land

under the title standing in the name of Muller. His tes-timony establishes this fact, and it is not disputed. In view of the foregoing it follows that the court erred in entering a non-suit. The judgment is reversed, with in-structions to the lower court to overrule the motion for a non-suit.