### T. J. DWYRE v. B: J. SPEER ET AL.

### No. 613.

1. **Deed—Description.**—When the owner of a tract of land undertakes to convey out of it a specified tract, and fails to do so for want of sufficient description, the deed would be void, and should not be construed to convey an undivided interest of the number of acres stated therein.

2. **Construction of Private Deed.**—A voluntary deed, if capable of two constructions, will be given the one which will make it effective. It should be presumed that the grantors intended to convey some land, and although they have stated the quantity to be 320 acres more or less, and have given boundaries that include perhaps five times as much, part of which had already been sold, the deed should not be declared void on that account.

3. **Identity of Land a Question for the Jury.**—When extraneous admissible evidence makes the description of the land conveyed by a private deed uncertain, it should go to the jury along with the parol evidence in explanation thereof; and the identity of the land becomes a mixed question of law and fact, to be determined by the jury under the instructions of the court.

4. **Estoppel.**—See facts held not to show a boundary by estoppel.

5. **Sheriff's Deed—Insufficient Description.**—The deed purported to convey 888 acres, more or less, being all of the league except six tracts, which were described by reference to deeds of record. If any of the excepted tracts can not be identified on the ground, then the sheriff's deed would be void for uncertainty of description.

6. **Sheriff's Deed—Void for Uncertainty of Description.**—The land conveyed is described as 1500 acres in a square form, or as near thereto as practicable, beginning where the Tantabogue Creek crosses the southeast boundary of said league, so as not to include the improvements on the homestead. From the evidence it appears that no survey of land at all in the shape of a square could be made without including land that had been already sold. Such description of land in a sheriff's deed renders it void for uncertainty.

CROSS-APPEAL from Houston. Tried below before Hon. A. B. WATKINS.

*Nunn & Nunn*, for appellant.—1. The court erred in admitting the deeds of D. Becton and wife, M. D. Becton, to J. P. Delespine, and by the latter to Hughes, for the reason they do not describe the land in controversy, or any land whatever.

The deed in question from M. D. and David Becton to J. P. Delespine was an attempt to convey a specific 320 acres of land, the separate property of the wife, M. D. Becton, but which utterly failed to describe the land intended to be conveyed, or in fact any land at all, and was therefore null and void. Giddings v. Day, 84 Texas, 605; Johnson v. Bryan, 62 Texas, 625; Fitzgerald v. Turner, 43 Texas, 85.

2. The court erred in construing deed from Becton and wife to have the effect to convey to J. P. Delespine one undivided interest of 320 acres in the James Neville league, and for holding that such undivided interest gave defendants any right in the land in controversy. A deed for a specified and definite quantity of land out of a larger survey can not, when description fails, be construed to give an undivided interest. Grogan v. Vache, 45 Cal., 610–613; Lawrence v. Ballou, 37 Cal., 5–18; Schunk v. Evoy, 24 Cal., 110; Bird v. Bingham, 18 Barb. (N. Y.), 494; Sedgwick & Wait, 463; 2 Am. and Eng. Encyc. of Law, 497, and note.

*J. R. Burnett*, for appellees.—1. The court erred in charging the jury that the deed from Becton and wife to J. P. Delespine, under which defendants claimed, conveyed an undivided interest of 320 acres in the James Neville league, and that the sheriff's deed to Nunn and Collins conveyed a half-interest, and to find that plaintiff and defendants, Worthington and Speer, were joint owners of the land sued for.

2. The court erred in overruling defendants' motion to strike out said sheriff's deed to Nunn and Collins, because said deed did not describe any land with sufficient certainty, and because plaintiff failed to locate and identify the land, if any, sold at said sheriff's sale, and clearly failed to locate and identify any portion of the land sued for as having been bought at said sheriff's sale.

GARRETT, Chief Justice.—This is an action of trespass to try title brought by T. J. Dwyre against B. J. Speer and W. B. Worthington and certain tenants of theirs, who afterwards disclaimed, to recover fifty acres of land, a part of the James Neville league, situated in Houston County. Plaintiff deraigned title through an execution sale against M. D. Becton, the wife of David Becton. Mrs. Becton inherited from James Neville, the grantee, who was her former husband, his community interest in such of the league as remained unsold at his death. The execution sale was upon a judgment in favor of D. A. Nunn and John Collins against M. D. Becton and husband. The land was bought by Nunn and Collins, and the deed of the sheriff to them is dated September 1, 1868, and purports to convey "888 acres of said James Neville league more or less," being "all of the James Neville league of land situated on Tantabogue Creek, about sixteen miles southwest from Crockett, excepting from said sale the following tracts, to wit:

"1. Two hundred acres sold to R. W. Gale, deceased; reference to Book P, page 367.

"2. Three hundred and twenty acres sold of said league to J. P. Delespine; reference to Book P, page 496, deed record said county.

"3. Three hundred and twenty acres sold to Elias Atkinson; reference to deed in his possession for description.

"4. Fifteen hundred acres sold to W. H. Cundiff; for description reference is made to Book Q, page 179, deed records of said county.

"5. Two hundred acres tract, to include the home of M. D. Becton.

"6. One thousand acres sold by James Neville in his life-time to Dr. Southwick."

By reference for a description of the several tracts mentioned in said deed to be excepted from said league, they appear from the record as follows:

"1. Two hundred acres sold to R. W. Gale is easily identified, and in no way conflicts with the land in controversy.

"2. Three hundred and twenty acres sold to J. P. Delespine, purported to be conveyed by the warranty deed of M. D. Becton and her husband, David Becton, to said Delespine, dated March 10, 1866, and is described as 'A part of the headright league of James Neville, about sixteen miles south of Crockett, bounded as follows: on the north by Tantabogue Creek, west by the lands of R. N. Reed and R. W. Gale, and on the west by the east boundary line of the league, and containing 320 acres of land, more or less.' Defendants claim the land in controversy under this deed.

"3. Three hundred and twenty acres of land sold to Elias Atkinson was in his possession, and is easily identified.

"4. Fifteen hundred acres sold to W. H. Cundiff was an execution sale, and the description contained in the sheriff's deed was as follows: 'One thousand five hundred acres of land as the property of Mrs. M. D. Becton, it being a part of the James Neville headright league num-

ber 59, of the unsold part of said league, to be a square form or as near thereto as practicable, beginning where the Tantabogue Creek crosses the southeast boundary line of said league, so as not to include the improvements thereon on her homestead situated in said county.'

"5. The homestead tract of 200 acres is found by the court to be identified.

"6. One thousand acres sold by James Neville to Dr. Southwick is easily identified."

Upon the trial below the court construed the Delespine deed to convey an undivided interest of 320 acres of the Neville league; held that the deed from the sheriff to Nunn and Collins conveyed Mrs. Becton's interest in the land in controversy; and instructed the jury to find that the plaintiff and the defendants Speer and Worthington were joint owners of the land; and the jury having done so, the court entered judgment in favor of each party for one-half of the land.

If it should be conceded that the court was correct in holding that the deed from M. D. Becton and her husband to J. P. Delespine, failing to describe any land with certainty, was effective to convey an undivided interest of 320 acres of the unsold part of the Neville league, and that the sheriff's deed to Nunn and Collins was valid, it does not follow that each deed would convey one-half of the land in controversy. This charge of the court was error, under any aspect of the case, as presented by the record. It will be unnecessary, however, from the view we take of the case, to undertake to define what the record shows the rights of the parties would be, under such construction of the Delespine deed, because that construction, as we think, was not correct. Mrs. Becton and her husband undertook to convey to Delespine a specified tract of land, and if they failed to do so for the want of a description, the deed would be void, and not construed to convey an undivided interest of 320 acres in the entire balance of the league remaining unsold. Grogan v. Vache, 45 Cal., 610; 2 Dev. on Deeds, sec. 1019. But, from our construction of the deed, it does not become necessary to decide this question.

Upon its face, the deed from Becton and wife to Delespine is not uncertain. A latent ambiguity, however, arises from the evidence, which was admissible to aid the description contained therein. Tantabogue Creek is given as the northern boundary of the land attempted to be conveyed. It is in fact the northeastern boundary, but may be said to be the northern boundary, as it is more northern than eastern. The lands of R. N. Reed and R. W. Gale are stated to be on the west; on the northwest is the Southwick tract of 1000 acres, which then belonged to Gale; on the southwest, the evidence renders it reasonably certain that the grantors were calling for lands belonging to R. N. Reed in the Welsh league. There is no call for a south boundary, but the call for boundary on the east might be answered by the southeast boundary so far as appears from the face of the deed, and the tract would be well described. The evidence, however, shows that the east

boundary of the league is on the opposite side of Tantabogue Creek, and can not be made at all applicable so as to describe any tract of land. The deed being a voluntary deed, if capable of two constructions will be given the one that will make it operative, and it may be assumed that the southeast boundary line of the league south of Tantabogue Creek is the east boundary line of the league called for. This, we apprehend, is a reasonable construction of the deed, and is such a one as will give it validity and force. Giving it this construction, however, makes the deed operative to convey all of the land in said league south of Tantabogue Creek and west of the Southwick survey, which includes 1850 acres as estimated by the surveyor, Duren; and the tract would also include within its limits the 320 acres sold by Neville to Elias Atkinson, and probably a part of the Hannah Edgar 640 acres. But it should be presumed that the grantors intended to convey some land, and although they have stated the quantity to be 320 acres, more or less, and have given boundaries which include perhaps five times as much land as 320 acres, the deed should not be declared void on that account. It becomes immaterial whether the lines run by Broxson to identify the tract not long after the deed had been executed should be held to fix the limits of the tract, since the land in controversy lies within said survey.

Dwyre sought to introduce evidence to show an estoppel in his favor against the defendants, which on their objection was excluded by the court. As shown by the bill of exceptions, plaintiff offered to prove by D. A. Nunn, that prior to the sale to him A. A. Aldrich represented the vendors of defendants, and acting as their agent and attorney at law, had negotiated a sale of 320 acres of land to defendants, and at the same time two or three other tracts to plaintiff and others claiming under the deed from Becton and wife to Delespine; and that it coming to the attention of witness, he approached Aldrich and conversed with him about the matter and showed him that he was not entitled to the land claimed; whereupon Aldrich discontinued his attempt to sell, and disclaimed any intention to go outside of a 320 acres tract, which said Nunn recognized as the Delespine claim, and so notified the defendants and others. No such agency on the part of Aldrich is shown as that his statements would bind the defendants; and furthermore, if the question of agency were not involved, the proposed testimony does not show sufficient facts to constitute an estoppel; nor is it offered in connection with other proof that would make it sufficient.

As we have before stated, the deed from Becton and wife to Delespine upon an inspection thereof by the court does not appear altogether uncertain, but the uncertainty arises from extraneous facts. It should then go to the jury along with the parol evidence in explanation thereof, and the identity of the land becomes a mixed question of law and fact to be determined by the jury under the instructions of the court. Kingston v. Pickins, 46 Texas, 101.

Let us inquire then whether the plaintiff should recover on the strength of his own title. He can not do so on the strength of his prior possession, for he has shown none. The land sued for appears to be a timber tract, and no possession thereof is shown; only some use of the timber appears from the evidence. Was the sheriff's deed to Nunn and Collins, through which the plaintiff deraigns title, valid? The description is sufficiently certain to convey 888 acres, more or less, as the unsold interest of Mrs. Becton in the James Neville league, if the land can be identified by the exclusion of the tracts mentioned in the deed as excepted from the conveyance. If any of these tracts of land can not be identified on the ground, then the 888 acres of the league sold as the property of Mrs. Becton can not be identified, and the deed would be void for uncertainty of description. Wofford v. Mc-Kinna, 23 Texas, 36; 2 Dev. on Deeds, sec. 1432; Freem. on Ex., sec. 330. Plaintiff is confronted here with this dilemma: if the Delespine deed is void, then his sheriff's deed is void; and if it is valid, he can not recover, because defendants have the superior title. Four of the remaining tracts can be easily identified and excluded; but we are of the opinion that the deed of the sheriff of Houston County to Cundiff is void for uncertainty of description. The land to be conveyed is described as 1500 acres "of the unsold part of said league, to be in a square form, or as near thereto as practicable, beginning where the Tantabogue Creek crosses the southeast boundary line of said league, so as not to include the improvements" on the homestead. There is the same element of uncertainty here as in the case of Wofford v. Mc-Kinna, supra, and in addition thereto, the uncertainty introduced by the exclusion of the parts of the league that had been sold and the improvements on the homestead. According to one of the maps in evidence, to commence at the intersection of the creek and the southeast boundary of the league would make the tract conflict with a tract of 640 acres previously sold to Hannah Edgar by James Neville, and the Atkinson 320 acres, so that no survey of the land could be made in a shape at all in the form of a square that would not include in it land that had been already sold. The record does not show but that the levy under which the sale of Nunn and Collins v. Becton contained the same description as the sheriff's deed.

It is not necessary to pass on any of the other questions presented by the assignments. The judgment of the court below will be reversed on the cross-appeal of the appellees, and the costs of the appeal will be adjudged against the appellant.

The judgment will be reversed, and the cause remanded for another trial.

*Reversed and remanded.*

Delivered June 25, 1894.

Williams, Associate Justice, was disqualified, and did not sit in this case.