## SULLIVAN v. ·FANT et al.

(Court of Civil Appeals of Texas.  San Antonio.  June 4, 1913.  Appellants' Motion for Additional Conclusions of Fact and Law Oct. 22, 1913.   Rehearing Denied Nov. 19, 1913.)

1. APPEAL AND ERROR (§ 192*) — OBJECTION BELOW—NECESSITY.

An assignment of error, in trespass to try title, that, appellant having paid a certain sum for the land in controversy, if appellee claimed that appellant acquired the land as trustee for appellee's benefit he should have offered in his pleadings to do equity by reimbursing appellant for the purchase price was really an objection to the sufficiency of the pleadings and should have been presented as an exception to the pleading making that issue.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1221–1225, 1239; Dec. Dig. § 192.*]

2. TRIAL (§ 352*)—SPECIAL INTERROGATORIES —LEADING QUESTION.

A special interrogatory in an action of trespass to try title brought by S., "Did S. purchase the land in controversy in this suit from G. for S. & Co. or for D.?  Answer 'Yes' or 'No,' " was not leading not suggesting how the question should be answered.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 840–842, 844, 845; Dec. Dig. § 352.*]

3. TRESPASS TO TRY TITLE (§ 41*)—ACTIONS— SUFFICIENCY OF EVIDENCE.

In an action of trespass to try title, evidence *held* to support a finding that plaintiff purchased the land in controversy for one or another of the persons named.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 62, 63; Dec. Dig. § 41.*]

4. EVIDENCE (§ 594*) — FAILURE TO OFFER EVIDENCE—PRESUMPTION.

Where the evidence tends to establish a fact which it is within the power and to the interest of the opposing party to disprove, if false, his failure to attempt to disprove it strengthens the probative force of the evidence tending to prove it.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 2431; Dec. Dig. § 594.*]

5. JUDGMENT (§ 956*)—RES JUDICATA.

Where, in trespass to try title, the evidence showed that any title to the land acquired by plaintiff for S., who was at the time trustee for defendant's predecessors in interest, inured to defendant's benefit as beneficiary, and that the land was recovered by such predecessors in an action against S. whose title was thereby divested, at which time an accounting of the trust estate was had, it is presumed that plaintiff, who was a party to the other action, was then reimbursed for the amount paid for the land, so that defendant herein was not

bound to show a tender of the sum paid by plaintiff for the land.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1822–1825; Dec. Dig. § 956.*]

**6. APPEAL AND ERROR (§ 728*)—ASSIGNMENTS OF ERROR—GENERAL ASSIGNMENTS.**

An assignment of error in admitting the evidence of a witness set forth in a specified bill of exceptions was too general to be considered, where such bill of exceptions contained five or more distinct rulings on the admission of parts of the testimony of such witness.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3010–3012; Dec. Dig. § 728.*]

**7. TRUSTS (§ 101*)—RESULTING TRUST.**

The employé of the trustee of realty who purchased an outstanding title to the injury of the beneficiary will be held to hold the title in trust for the beneficiary.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §, 152; Dec. Dig. § 101.*]

**8. TRUSTS (§ 236*)—RESULTING TRUST.**

A trustee who wrongfully purchased an outstanding title to land of the cestui que trust cannot claim that he is not estopped to assert such title unless he be reimbursed for the money paid for the land in his efforts to deprive his beneficiary of title.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 325½, 326, 336; Dec. Dig. § 236.*]

Appellant's Motion for Additional Conclusions of Fact and Law.

**9. VENDOR AND PURCHASER (§ 244*) — BONA FIDE PURCHASER — SUFFICIENCY OF EVIDENCE.**

Evidence in trespass to try title to land claimed by defendants to have been wrongfully purchased by plaintiff for S., who was trustee of the land for defendants' predecessors in interest, *held* not to show that the legal title ever passed from S. to a bona fide purchaser.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 609–611; Dec. Dig. § 244.*]

**10. EVIDENCE (§ 158*)—BEST EVIDENCE—CONTENTS OF TAX ROLLS.**

While payment of taxes may be shown by the tax receipts or by the evidence of any one knowing of the payment, the tax collector cannot testify to or show by certificate facts which are shown by the tax rolls; the rolls or certified copies thereof being the best evidence of their contents.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 472, 473, 474½–504, 506–526; Dec. Dig. § 158.*]

**11. DEEDS (§ 110*) — TRIAL (§ 136*) — JURY QUESTION.**

The sufficiency of certificates of acknowledgment and the construction of deeds are ordinarily questions for the court and not for the jury.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 255, 293; Dec. Dig. § 110;* Trial, Cent. Dig. §§ 318, 320, 321, 323–327; Dec. Dig. § 136.*]

**12. APPEAL AND ERROR (§ 1062*)—HARMLESS ERROR—SUBMISSION OF ISSUES.**

The improper submission to the jury of questions as to the sufficiency of certificates of acknowledgment and the construction of deeds would be harmful only so far as the jury approved deeds which were not sufficient or not duly registered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4212–4218; Dec. Dig. § 1062.*]

**13. TRIAL (§ 351*) — SPECIAL ISSUES — REQUESTS—ISSUES ALREADY COVERED.**

There was no error in refusing to submit a special issue, in trespass to try title, as to whether taxes on all of the land in controversy were duly paid by a certain ·person for five consecutive years, where the question of payment of taxes was generally submitted in another issue, and the court instructed that the taxes must have been paid each year consecutively within a reasonable time after due.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 829, 834–839; Dec. Dig. § 351.*]

**14. TRIAL (§ 350*)—SPECIAL ISSUES.**

The submission of a requested special issue, in trespass to try title, as to whether all the taxes on all the land were paid by F. for five consecutive years was properly refused where the evidence showed that another whose title F. held had also paid taxes for a number of years.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 828–833; Dec. Dig. § 350.*]

**15. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS—CHARGES ALREADY GIVEN.**

Requested instructions were properly refused where special charges relating to the same issue were given by the court.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

**16. TRIAL (§ 351*)—SPECIAL ISSUES—REFUSAL OF REQUESTS.**

A request for submission to the jury, in trespass to try title, of the question whether there were any breaks in the use by defendant's predecessors in interest and his tenants of the land in controversy, and how long such breaks continued, was properly refused, where the court fully instructed as to breaks in possession and the effect of ·temporary vacancy and defined peaceable possession.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 829, 834–839; Dec. Dig. § 351.*]

**17. APPEAL AND ERROR (§ 742*)—BRIEFS—PROPOSITION.**

The proposition must point out the error in the instructions, the giving of which was assigned as error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

**18. APPEAL AND ERROR (§ 1052*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.**

Error in admitting evidence over objection is harmless, where such evidence was afterwards admitted without objection.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4171–4177; Dec. Dig. §, 1052.*]

**19. APPEAL AND ERROR (§ 750*) — ASSIGNMENTS OF ERROR—QUESTIONS CONSIDERED.**

An assignment of error in trespass to try title, objecting generally to the admission in evidence of a certified copy of a deed, will only be considered as to the propositions germane thereto and will not raise the question whether the deed was admissible as the deed of a certain one of the grantors, since such question could be urged only under assignments complaining of the failure to give instructions so limiting the consideration of the deed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3074–3083; Dec. Dig. § 750.*]

**20. TRIAL (§ 87*)—RECEPTION OF EVIDENCE—OBJECTIONS—GENERAL OBJECTIONS.**

Where the objections to the admissibility of a deed in evidence in trespass ·to try title

---

*For other cases see same topic and section NUMBER in Dec. ·Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

were general, the objections were properly overruled if the deed were admissible as to any of the parties upon any issue.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 227; Dec. Dig. § 87.*]

**21. ACKNOWLEDGMENT (§ 36*)—CERTIFICATE—SUFFICIENCY.**

A certificate of acknowledgment reciting: "Before me, N., district clerk of S. county, appeared T., to me well known, who, after being duly sworn, said upon oath that the foregoing instrument was signed and delivered in his presence by the parties whose names are signed thereto, for the purposes and consideration therein stated, and that, at the request of said parties, he and B.     said instrument as witnesses, to certify which, witness my hand and the seal of the district court, at office, in R., this 19th day of August, 1872"—was sufficient except as to the married woman who was a party to the deed.

[Ed. Note.—For other cases, see Acknowledgment, Cent. Dig. §§ 181, 182, 184–198, 221–223; Dec. Dig. § 36.*]

**22. DEEDS (§ 38*) — DESCRIPTION OF LAND — CERTAINTY.**

A deed conveying a strip "beginning at the northwest corner of that portion which was conveyed to C. by M. by deed bearing —— day of ——, 18—," was not admissible in absence of proof showing the location of the northwest corner of the C. tract.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 65–79; Dec. Dig. § 38.*]

**23. DEEDS (§ 38*) — DESCRIPTION OF LAND — UNCERTAINTY.**

A deed conveyed land described as "all that right, title and interest which we possess in and to a certain two-league tract of land lying and being situated in the county of H., Texas, originally granted by the crown of Spain in Mexico to M. and subsequently patented by the state of Texas to said original grantee or his heirs; that said land herein intended to be conveyed are undivided and are sixty varas front and running back two leagues for quantity and were acquired by said R. from her deceased father, C. M., who was the legitimate child of the original grantee." *Held,* that the description was so uncertain as to make the deed void.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 65–79; Dec. Dig. § 38.*]

**24. EVIDENCE (§ 353*) — ADMISSION OF EVIDENCE—ACKNOWLEDGMENT OF DEED.**

Though acknowledged before one not authorized to take acknowledgments, a copy of a deed which was on record for more than ten years without assertion of any claim adverse to the one evidenced by the deed was admissible in evidence under the substantially direct provisions of Rev. Civ. St. 1911, art. 3700.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1404–1428, 1430, 1431; Dec. Dig. § 353.*]

**25. TRIAL (§ 86*)—RECEPTION OF EVIDENCE—GENERAL OBJECTIONS.**

A general objection to the admission in evidence of certain deeds in trespass to try title was properly overruled where appellant was not entitled to have the instruments wholly excluded but merely to have their consideration limited to the issue upon which they were admissible and did not request that their consideration be so limited.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 226; Dec. Dig. § 86.*]

**26. EVIDENCE (§ 175*)—BEST EVIDENCE.**

A copy of a copy of the "expediente," issued to the original grantee of land by the Spanish crown, was not admissible in evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 561, 565, 568, 569; Dec. Dig. § 175.*]

**27. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.**

Error in admitting in evidence, in trespass to try title, a copy of a copy of the "expediente," issued to the original grantee of a tract from the Spanish crown, was harmless to plaintiff where defendant also introduced in evidence a copy of the judgment, in an action involving the land in controversy, which showed that such person was in fact the original grantee of the land, which judgment was rendered under an act permitting suits to establish the existence of grants by the Mexican government.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

**28. EVIDENCE (§ 366*)—INSTRUMENTS OF RECORD—RECORD OF FOREIGN GOVERNMENT.**

Where the original instrument is an archive of a foreign government and it is not possible to determine its genuineness by any record or other evidence within the jurisdiction of the court, some extrinsic evidence of the execution or genuineness of such instrument will be required before admitting it in evidence.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1521–1539; Dec. Dig. § 366.*]

**29. EVIDENCE (§ 372*) — PUBLIC RECORDS — COPIES.**

The execution of Mexican land grants were not sufficiently proven to entitle copies to admission in evidence, where there had never been any possession under the grants or any payment of taxes by the purported grantees, and the only evidence of genuineness was that the grants purported to be signed by a public official and looked old and were taken out of bundles of instruments covering the years of their supposed execution, which were in the municipal palaces of the cities in which they purported to have been executed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1613–1627; Dec. Dig. § 372.*]

**30. EVIDENCE (§ 353*)—RECITALS IN DEEDS—CONSIDERATION—PAYMENT.**

An instruction in trespass to try title that the recitals as to payment of the purchase price, in deeds under which defendants claimed, should not be considered as any evidence that the price was paid was erroneous as tending to lead the jury to believe that the recitals could not be considered for any purpose when they might be considered in connection with other circumstances as tending to show payment, though standing alone they would not be sufficient to prove payment.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1404–1428, 1430, 1431; Dec. Dig. § 353.*]

**31. VENDOR AND PURCHASER (§ 242*)—BONA FIDE PURCHASER—BURDEN OF PROOF.**

The burden of proof does not shift from one claiming as a purchaser for value without notice.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 603–605; Dec. Dig. § 242.*]

**32. ADVERSE POSSESSION (§ 25*)—SUFFICIENCY OF POSSESSION—POSSESSION AS BENEFICIARY.**

The possession held by a trustee of land after his repudiation of the trust would be the possession of the beneficiary under the limitation statutes, where it was established, in an

action between the parties, that such possession was held as trustee and the title was adjudged to be in the beneficiary.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 116–120; Dec. Dig. § 25.*]

33. ADVERSE POSSESSION (§ 115*)—JURY QUESTION—COLOR OF TITLE.

It was not for the jury to determine whether title or color of title had been shown by one claiming by adverse possession in trespass to try title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 314, 691–701; Dec. Dig. § 115.*]

Appeal from District Court, Bexar County; J. L. Camp, Judge.

Action by D. J. Sullivan against D. R. Fant and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Denman, Franklin & McGown, D. B. Chapin, and Clark & Bliss, all of San Antonio, for appellant. G. R. Scott and Boone & Pope, all of Corpus Christi, and Ball & Seeligson and Chas. W. Truehart, all of San Antonio, for appellees.

MOURSUND, J. We adopt appellant's statement of the nature of the pleadings filed:

"This is a suit in trespass to try title that was brought by appellant against appellees in the district court of Hidalgo county, Tex., and afterwards transferred by agreement of parties to the district court of Bexar county for the Forty-Fifth judicial district, in which appellant seeks to recover of appellees the title and possession of a tract of land situated in Hidalgo county, Tex., called the Tio Ayala grant, containing over four leagues of land. The suit was filed in the district court of Hidalgo county, Tex., June 14, 1909. Appellees pleaded not guilty, the statutes of limitations of three, five, and ten years, a special plea of res adjudicata, and a further special plea to the effect that appellant, if he ever acquired any title to the land in controversy, became a trustee of such title for the benefit of appellees. Appellees also, by way of cross-action against appellant, sought to have the certain two deeds, under which appellant claims that he acquired the title to the land in controversy, canceled as clouds upon their title. Appellant specially excepted to that portion of the special plea of appellees setting up the trust relation, and also pleaded a general denial of the special pleas and answers made by appellees, and also pleaded the coverture of Maria Gourlay, one of the parties under whom appellant claims, in avoidance of said pleas of limitations, and a plea of not guilty to the cross-action of appellees."

The case was submitted to the jury upon special issues, as follows:

(1) "Did D. J. Sullivan purchase the land in controversy in this suit from Isabella Gourlay de Belli and Maria Gourlay de Cres-po for D. Sullivan & Co. or D. Sullivan? Answer 'Yes' or 'No.' "

(2) "State whether or not D. J. Sullivan acquired the knowledge or information as to the title to the property in controversy in the parties from whom he claimed to have purchased same through and by reason of his employment by, connection with, and confidential relation to the banking business of D. Sullivan & Co. or D. Sullivan. Answer 'Yes' or No.' "

(3) "Have the defendants, and those whose estate they have, had and held continuous, peaceable, and adverse possession of the lands in controversy herein, using and enjoying the same, and paying all taxes thereon, concurrently as they accrued, claiming under a deed or deeds duly registered, for more than five years before the institution of this suit? Answer 'Yes' or 'No.' "

(4) "Have the defendants, and those whose estate they have, had and held continuous, peaceable, and adverse possession of the lands in controversy herein, using and enjoying the same, being in actual possession thereof, for a period of ten years before the institution of this suit; such possession, if any, being taken and held under a deed or deeds duly registered, describing, identifying, and designating the property in controversy? Answer 'Yes' or 'No.' "

All of said questions were answered "Yes."

The following issue was submitted at plaintiff's request and answered affirmatively, viz.:

"Was the land in controversy segregated and separated by a substantial fence from the lands in connection therewith or adjoining thereto; and, if so, when was said land so separated and segregated?"

Upon motion of defendants the court rendered judgment in favor of appellees against appellant that appellant take nothing by his suit, and that the deeds under which appellant claims title be canceled. We will first take up all assignments relating to the first special issue submitted to the jury.

By the first assignment of error complaint is made of the submission of special issue No. 1, hereinbefore stated. The first proposition under this assignment is very general, namely, that the issue was immaterial and the verdict of the jury giving an affirmative response to the question could not, under the pleadings and evidence in the case, form a basis for a judgment in favor of appellees. The statement under this proposition contains the evidence, or a large part thereof, bearing upon the issue, as well as that portion of defendants' pleading relating thereto, and we are of the opinion that the pleading made the issue and there was evidence to require its submission to the jury.

[1] The second proposition is as follows: "Appellant having acquired the legal title to the land in controversy, and having paid

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

therefor the sum of $6,642, if appellees claimed that, by reason of circumstances existing at the time, they had the right to have appellant declared a trustee of such legal title for their benefit, and desired to have said legal title divested out of appellant and vested in them, they should have offered to do equity in their pleadings and should have offered to reimburse appellant the said sum of money that he had expended in procuring the title to said land as a condition precedent to the exercise by them of any right to have a judgment rendered in their favor declaring a constructive trust." This proposition is really an objection to the sufficiency of the pleadings and should have been presented in the form of an exception to that portion of the pleading which makes the issue submitted to the jury.

[2] The third proposition is in substance that the question submitted was leading. The jury was instructed to answer the question "Yes" or "No," and there was no suggestion as to how it should be answered. We do not think the question was objectionable. O'Farrell v. O'Farrell, 56 Tex. Civ. App. 51, 119 S. W. 899; Moore v. Miller, 155 S. W. 573; Sullivan v. Ramsey, 155 S. W. 584. The assignment is overruled.

[3] The forty-sixth assignment questions the sufficiency of the evidence to support the finding of the jury in response to special issue No. 1. We think the jury was justified by the evidence in finding that D. J. Sullivan purchased the Balli and Crespo title to the land in controversy for D. Sullivan or D. Sullivan & Co. At the time of such purchase D. Sullivan & Co. held this land in trust for Lucie A. Fant, but had repudiated the trust, and were seeking to claim absolute title to the same. It was natural that the conveyance of an outstanding title would be taken in the name of D. J. Sullivan, who was not a member of the firm of D. Sullivan & Co., but merely an employé, and thus interpose another obstacle between the Fants and the recovery of their land. The relationship of the parties, their conversations, the immediate dismissal of the suit brought by Mrs. Balli and Mrs. Crespo, and the fact that D. Sullivan & Co. continued to collect the rents for this land without any remonstrance from D. J. Sullivan, all indicate that his purchase was for D. Sullivan or D. Sullivan & Co. Appellant's counsel say that he bought the Gourlay title because D. Sullivan refused to buy it, thereby greatly embarrassing J. C. Sullivan, appellant's brother, who had contracted for the same with the expectation that D. Sullivan would take the title and pay for same. Appellant did not so testify, his father, D. Sullivan, did not so testify, nor his brother, J. C. Sullivan, although they were the only persons who knew such fact, if it be a fact. Not one of the three took the stand as a witness, but appellant did state to Lasater, on the day before the trial, that the reason he bought the land was as above stated. This self-serving declaration, not under oath, made in anticipation of a trial, viewed in connection with the silence of the three persons who could testify regarding the matter and who were all presumably willing to assist plaintiff's case, must naturally have been viewed by the jury with great doubt, and in fact they had the right to, and did, discard it as unworthy of credence. In a motion for new trial, appellant states a reason for not securing the testimony of J. C. Sullivan but admits that it could have been procured by a postponement and that he asked for no postponement.

[4] As was said by Justice Gill in the case of Pullman Palace Car Co. v. Nelson, 22 Tex. Civ. App. 225, 54 S. W. 624: "When the proof tends to establish a fact and at the same time discloses that it is within the power and to the interest of the opposing party to disprove it, if false, the silence of the opposing party not only strengthens the probative force of the affirmative proof but of itself is clothed with a certain probative force." Appellant's failure to adduce evidence, within his power, to explain or rebut the circumstances indicating that he bought the Gourlay title for his father or the firm of D. Sullivan & Co. strengthens the presumption arising from those circumstances. Thompson v. Shannon, 9 Tex. 536. Without discussing the evidence in detail, we conclude it was sufficient to support the finding and adopt said finding as our conclusion of fact upon the issue.

The fifth assignment reads as follows: "The court erred in rendering judgment in favor of the defendants for the land in controversy for the reason that, if the plaintiff purchased the land for D. Sullivan & Co. or D. Sullivan, and thereby held the legal title in trust for D. Sullivan & Co. or D. Sullivan, before defendants could recover the land of him, they would have to reimburse him the $6,642 that plaintiff paid therefor; and the defendants not only failed to pay said sum to him but did not even tender to plaintiff said sum of money."

[5] In this case appellant is seeking to recover land from appellees and does not assert that he is a trustee for them, and appellees say that if appellant bought any title he did so for D. Sullivan or D. Sullivan & Co., who were at the time trustees for D. R. Fant and wife, through whom appellees claim, and the jury made findings supporting such theory. D. Sullivan or D. Sullivan & Co. held and owned the title relied upon by appellant, at the time when the land was recovered from them by Lucie A. Fant. Such recovery divested them of this title. A settlement of the trust affairs was had, and the trustees had an opportunity to charge Lucie A. Fant up with all sums for which she was liable to them. It is presumed they did have a full and fair accounting, and that the claim for

this money was litigated in the other suit. If D. J. Sullivan did not get this money from D. Sullivan & Co., he, being a party to the other suit, could have had determined his rights in regard to the matter. He is in the attitude of seeking to hold the land under a title vested in appellees in the former suit and, without alleging or proving that Lucie A. Fant's trustees did not repay him the money he expended in their behalf, contends that such money should be tendered him by appellees or else he should recover back the title which he bought for the trustees and of which they were divested. Under the facts, as found by the jury in answer to special issue No. 1, we hold it was not incumbent upon appellees to plead and prove a tender of the sum paid for the Gourlay title and therefore overrule the fifth assignment of error.

[6] The twenty-third assignment complains of the admission in evidence of the testimony of the witness Lasater, set forth in bill of exceptions No. 4. It appears that in said bill of exceptions five or more distinct rulings of the court on the admission of portions of the testimony by Lasater are complained of. Appellees object to the consideration of this assignment because the same is too general. This contention is sustained, and the assignment will not be considered. Berg v. Street Ry. Co., 49 S. W. 921; Frost v. Mason, 17 Tex. Civ. App. 465, 44 S. W. 53; Sloan v. Thompson, 4 Tex. Civ. App. 419, 23 S. W. 613.

We conclude that the court was justified in rendering judgment for appellees upon the finding of the jury in answer to special issue No. 1, and that no error was committed in submitting said issue or the admission of evidence with regard thereto, and that therefore the judgment of the trial court should be affirmed. As appellees contend the judgment should be affirmed upon the other issues found in their favor, we will briefly state our conclusions with respect to the assignments of error relating to such other issues.

We are of the opinion that appellees are entitled to have appellant declared a trustee for them under the second finding of the jury, as the evidence shows that he was, at the time he acquired the information leading to his purchase, employed by the banking firm of D. Sullivan & Co., who were trustees for Lucie A. Fant, and acquired such information by means of and through his relations to said firm.

[7] His duty to his employer's cestui que trust precluded him from dealing with the trust property to the injury of the cestui que trust, and, having purchased an outstanding title which the trustee was not permitted to purchase to the injury of the cestui que trust, he can be held to hold the title in trust for appellees, who hold the title of Lucie A. Fant. Gardner v. Ogden, 22 N. Y. 340, 78 Am. Dec. 192. If it was to the

benefit of the trust estate that the outstanding title be purchased for such estate, and it certainly was if the title was good, then it was the duty of the trustee and his employés to act in good faith to the cestui que trust with reference to such outstanding title, and it has been held that, if for the benefit of such trust estate the outstanding title is purchased, the trustee is entitled to reimbursement for the money so expended. Perry on Trusts, § 915.

[8] The trustee, or his employé purchasing the outstanding title for himself, is justly estopped from asserting such title against the cestui que trust, and we can see no equity in permitting him to say that such estoppel cannot be urged unless he be reimbursed money paid out in an effort to deprive the cestui que trust of the trust estate. Henyan v. Trevino, 137 S. W. 458–482; Home Investment Co. v. Strange, 152 S. W. 513.

If the judgment of the trial court depended alone upon the findings of the jury on the questions of limitation, we would reverse and remand the case for the following reasons: (1) Proof of payment of taxes was not made by proper evidence, the certificate of the tax collector being inadmissible, though a similar certificate, if made by the comptroller, is admissible under article 3708 of Revised Statutes of 1911. (2) Some of the deeds are insufficient to support the five years' statute of limitations. (3) While the evidence sustains the finding that adverse possession was held of the lands for ten or more years, using the same for grazing purposes, yet we do not think the possession was actual within the meaning of the last words of article 5678 of Revised Statutes of 1911, and the Trevino pasture was not kept segregated for a period of 10 years but was, after being fenced to itself for a few years, placed in the same inclosure with the Lucero tract, which contained more than 5,000 acres. As we construe article 5678, the Barrosa pasture could be held under the 10 years' statute of limitation.

The newly discovered evidence, for which a new trial was sought (see assignment 51), bears only on the question when adverse possession of the land in controversy was claimed by D. Sullivan & Co. against the Fants; the contention apparently being that notice to D. R. Fant was notice to his wife of Sullivan's adverse claim, and that his disclaimer in a suit defended by his wife's trustees cast light upon some of the issues. This assignment is of no importance, in view of the ground upon which we have affirmed this case, but aside from that there is no merit in the assignment because proper diligence was not used to procure the testimony, nor do we consider it of sufficient importance to have entitled appellant to a new trial, had the judgment been sustained on the ground of limitation.

The cross-assignments have not been in-

vestigated by us, owing to our conclusion that the judgment should be affirmed.

Judgment affirmed.

### Appellant's Motion for Additional Conclusions of Fact and Law.

[9] Appellant has filed a motion requesting us to file additional conclusions of fact and law. The questions of fact covered by the request were not deemed of sufficient importance by appellant to require consideration upon the trial of the case, as no request was then made that such issues be submitted to the jury, and therefore, in making additional findings upon such matters as are deemed material, the same will be made so as to support the judgment where there is evidence to support the same. Yielding to appellant's insistence that we pass upon the assignments of error not disposed of in the original opinion, we briefly state our conclusions upon all the other assignments and the cross-assignments.

### Additional Conclusions of Fact.

(1) The legal title to the property in controversy, as well as a large amount of other property, became vested in D. Sullivan & Co. as trustees with the understanding that they were to sell and convey sufficient thereof to pay the indebtedness of D. R. Fant to D. Sullivan & Co., return, redeliver, and reconvey to Lucie A. Fant the remaining properties after paying such indebtedness.

(2) The fact that such trust relation existed was established by a judgment rendered in cause No. 19,375 in district court of Bexar county, wherein D. R. Fant and Lucie A. Fant were plaintiffs and D. Sullivan & Co., D. Sullivan, W. C. Sullivan, D. J. Sullivan, and the Santa Rosa Ranch Company were defendants, and Lucie A. Fant recovered of D. Sullivan & Co. and the Santa Rosa Ranch Company the land in controversy.

(3) The evidence fails to show that the legal title to the land in controversy ever passed from D. Sullivan & Co. to the Santa Rosa Ranch Company. In this connection it may be said that no deed from D. Sullivan & Co. to the Santa Rosa Ranch Company was introduced in evidence, and while Gallagher, the president of said company, testified that a deed had been made, he did not testify that it had been delivered, and admitted that he did not know whether any of the consideration was paid. He testified the Santa Rosa Ranch Company was a corporation, of which he, Sanford, and Kelley were the incorporators. The capital stock was $50,000. He did not know how much Sanford and Kelley put in. He said further: "I financed the original corporation and it was not all owned by D. Sullivan. My remembrance is that D. Sullivan & Co. deeded to the Santa Rosa Ranch Company something over 100,000 acres of land. We contracted to

pay $3 an acre for the land, but before we got thoroughly settled up this trouble with the Fants came up. I told Mr. Sullivan, 'Didn't want to mix in it.' I was made a party to the original suit, I think, but told him I didn't want to get mixed up in it and I wanted to turn it back to him, and it was turned back. I don't remember whether any of the consideration was paid D. Sullivan or not." "The land was deeded to the Santa Rosa Ranch Company. It would not have been a cash transaction anyway, although there was no vendor's lien referred to in the deed, still we put up the capital stock as security for the money we needed, and that meant that stock was security for the money, regardless of the amount." The witness fails to explain how the corporation, with $50,000 capital stock, could buy $300,000 worth of land upon the security of the stock alone, not even giving a lien upon the land. The entire testimony shows that the deal was never closed nor the deed delivered. While the name of the corporation was used in making the lease to Lasater, containing an agreement for the purchase of the 26,000 acres upon the title being perfected, yet it appears that all negotiations took place between Lasater and D. Sullivan and D. J. Sullivan, the principal part being taken by D. Sullivan in behalf of the lessors, and further that all payments of money made by Lasater were to D. Sullivan & Co. Appellant during the negotiations stated to Lasater: "The reason we want to sell this land is that we think that W. C. Sullivan's (that is, my brother's) life is in danger and we don't want him in that country."

(4) Appellees' pleadings show that D. Sullivan & Co. were authorized to sell only so much of the trust property as was necessary to pay the debts due by D. R. Fant and do not show that D. Sullivan & Co. were authorized to sell to a corporation in which they, or either of them, were interested.

(5) The evidence shows that in payment for the Gourlay title appellant gave his check on D. Sullivan & Co., and the cashier of said bank, O'Brien, testified such check was paid by said D. Sullivan & Co. The check and O'Brien's testimony constitute all the evidence on this point, and there is no testimony to the effect that D. J. Sullivan was never repaid the money paid out by him if said check was charged to his account.

(6) While the Barrosa pasture contained over 5,000 acres, the survey in controversy in this suit constituted all of said pasture except a narrow strip along a portion of the east line of said survey which was inclosed therewith by running the east fence straight north from the southeast corner without making allowance for a small offset. The land fenced with the survey in controversy being only about 983 acres, it cannot be said that there were 5,000 acres owned or claimed by Fant inclosed by a

fence in connection with or adjoining to the land in controversy.

(7) The north and west fences of the Barrosa pasture were on the survey lines of the survey in controversy, the east fence on part of the line, while the south fence cut off a league of the land in controversy into the Trevino pasture. There is evidence from which the jury could find that the Barrosa was entirely fenced in the latter part of 1891 or first part of 1892, though some witnesses place the time as late as June, 1892. The fences were maintained until the occupancy of Lasater under his second lease, beginning in 1906, when he repaired the fence between the Barrosa and Trevino only as far as the Muertez well, leaving the two pastures in the same inclosure under his second occupancy. With the exception of a short interval or two when excessive droughts caused such a lack of water or grass that temporary removals of stock became necessary, the Barrosa pasture was used continually for grazing purposes by Fant or his tenants from the time it was fenced until Gunter & Jones gave up possession in the spring of 1904, being for a period of more than 10 years, during all of which time it was inclosed by fence. The Trevino league was also inclosed and used for grazing purposes, by those whose title appellees have and hold, continuously for more than ten years but about 1897 was placed in the same inclosure with the Lucero pasture which contained more than 5,000 acres.

(8) The Trevino pasture, consisting of one league, and the Lucero pasture, consisting of three leagues, were, during the occupancy of Gunter & Jones, united by removal of the partition fence, thus bringing into the same inclosure with the Trevino league more than 5,000 acres of other land owned or claimed by Fant.

(9) The testimony to the effect that on the morning previous to the day when Lasater testified appellant stated to Lasater that he bought the Gourlay title because J. C. Sullivan got himself in such a position that the Gourlay heirs could force him to take the title, and so appellant took it, was introduced by appellees. We do not regard it as material who introduced the testimony. The fact remains that appellant was content to rely upon the same when he and his relatives could have taken the stand and testified under oath concerning matters solely within their knowledge. We make the finding because appellant earnestly insists our failure to state who introduced the testimony does him an injustice.

### Additional Conclusions of Law.

Appellant requested the giving of special charge 3a to the effect that the evidence was insufficient to support appellees' claim of title by virtue of five years' limitation. Some of the deeds under which appellees claim are sufficient to support the five years' statute of limitation, but proof of payment of taxes was made over appellant's objections, by a written statement showing the number of acres of land out of this grant assessed, and by whom, for the years 1892 to 1910, with amount of taxes paid, and the number of the tax receipt; the same being certified to as follows: "I, J. R. Alamia, tax collector in and for Hidalgo county, Tex., do hereby certify that the above and foregoing is a true, complete, and correct list of all assessments and the amount of taxes paid on lands in 'Las Norias de Tio Ayala' Grant Esteban Martinez, original grantee, in Hidalgo county, Tex., as is shown by the original tax records in my office from the year 1892 to 1910, inclusive." Appellees contend that this statement was admissible as a certified copy of portions of the tax rolls and also as an examined copy. The instrument does not purport to be a copy of portions of the rolls, nor is it certified to be such a copy, and, when the testimony of Alamia is examined, we do not think it sustains the theory that the statement is an examined copy of portions of the rolls. He said it was "an exact copy of those persons rendering for that particular grant." It is nothing more than a list of the persons who rendered land for taxes during those years out of the Tio Ayala grant, stating the number of acres rendered by each and the amount of taxes assessed, together with the number of the receipt written after such assessment by the tax collector. Such a certificate given by the comptroller of public accounts (article 3708, Revised Statutes 1911) is admissible in evidence, but we know of no provision authorizing the admission in evidence of such a certificate made by the tax collector, though a certified copy of the rolls in his office or portions thereof is admissible.

[10] Payment of taxes may be shown by the receipts, or by the direct evidence of either the person who paid same or the person to whom paid, or in fact any one who knows as a fact that they were paid, but the tax collector cannot testify to what is shown by the tax rolls, as the rolls or certified copies of the portions relating to the matter furnish the best evidence of their contents. No legal proof of payment of taxes was made. It follows that the twenty-first assignment, complaining of the introduction of this statement, must be sustained, also the sixth assignment complaining of the refusal of special charge 3a.

[11, 12] Assignments 7 and 15 relate to the form of the questions submitting the issues of five and ten years' limitation. The questions relating to the sufficiency of certificates of acknowledgment and the construction of deeds are for the court and should not have been left to the jury. Harm could result only to the extent that deeds not sufficient or not duly registered are approved by the jury. The assignments are sustained.

[13, 14] The court did not err in refusing to submit the following special issue: "Were all the taxes on all the land in controversy paid by D. R. Fant, Sr., for any consecutive period of five years, each year as such taxes became due or within a reasonable time after they became due?" He had submitted in general terms the question of payment of taxes in issue No. 3 and had given a special charge requested by appellant instructing the jury that the taxes must have been paid each year consecutively during the full period of five years as such taxes became due for the particular year or within a reasonable time thereafter. In addition this issue limited the payment to D. R. Fant, whereas it appears that Eduardo Villareal, whose title Fant held, paid taxes for a number of years under various deeds. Assignment No. 8 is overruled.

[15] The ninth assignment complains of the refusal of the court to give special charge No. 6, requested by plaintiff. The court was not required to give this charge, having given special charges Nos. 9, 10, and 13, requested by plaintiff, relating to the same issues. Railway Co. v. Beckham, 152 S. W. 228; City of Greenville v. Branch, 152 S. W. 486.

There is no merit in the tenth, eleventh, and twelfth assignments of error, and they are overruled.

[16] Assignment 13 complains of the court's refusal to submit to the jury the following question: "Was or were there any break or breaks in the use of D. R. Fant and his tenants of the land in controversy, and, if so, when did such break or breaks occur, and how long did such break or breaks continue?" In connection with questions 3 and 4 the court gave special charge No. 9, requested by appellant, relating to the five years' limitation, and fully instructed the jury with respect to the matter of breaks in the possession, and in the second clause of his charge the court defined peaceable possession and instructed the jury regarding the effect of temporary vacancy of the premises. The assignment is overruled.

The fourteenth assignment is overruled. We fail to see how appellant could be prejudiced by an instruction on a matter conceded by him. We are also of the opinion that the charge was not upon the weight of the evidence.

The sixteenth assignment is overruled because we are of the opinion that the evidence would support a finding of ten years' limitation as to the Barrosa pasture.

The seventeenth assignment is without merit. It does not appear that any evidence was offered regarding the amount of land in the tract in controversy except the field notes, and there was no disputed issue to be determined by the jury.

The testimony was undisputed regarding the size of the inclosures, and we see no necessity for submitting the issue mentioned in the eighteenth assignment. If it was necessary to submit the same, it should be submitted separately as to each pasture, because, when submitted as to all the land, the jury could only answer in the negative, for the Trevino pasture clearly was not kept segregated for a period of ten years. The assignment is overruled.

[17] The nineteenth assignment complains of an instruction given by the court, but the proposition points out no error in the instruction but relates to insufficiency of the evidence to support ten years' limitation. The assignment is overruled.

The twentieth assignment is overruled. The answer to the question is supported by evidence.

[18] The twenty-second assignment is overruled because the testimony objected to was subsequently admitted without objection.

The twenty-fourth assignment is based upon the admission in evidence of a certified copy of a deed by Ysidro Martinez and others to John L. Haynes, dated January 3, 1871, recorded August 29, 1872. The names of George K. Thorne and Joseph Burnam appear as witnesses, and the certificate of acknowledgment reads as follows: "Before me, James I. Nix, district clerk of Starr county, appeared G. K. Thorn, to me well known, who, after being duly sworn, said upon oath that the foregoing instrument was signed and delivered in his presence by the parties whose names are signed thereto, for the purposes and consideration therein stated; and that, at the request of said parties, he and Joseph Burnam said instrument as witnesses. To certify which, witness my hand and the seal of the district court, at office, in Rio Grande City, this 19th day of August, A. D. 1872."

[19] Objection is made to the consideration of this assignment on the ground that it presents several grounds of error in violation of rule 29 (142 S. W. xii). The assignment presents only one question, namely, the admissibility in evidence of the deed in question, and therefore must be considered, but the consideration will be limited to such propositions as are germane to the issue presented and cannot be extended to the question whether the deed was admissible as the deed of a certain one of the grantors. Such question could only be urged under assignments complaining of the failure of the court to give instructions limiting the consideration of the deed. Stephens v. Mathews' Heirs, 69 Tex. 341, 6 S. W. 567; Minor v. Powers, 38 S. W. 400; Edens v. Simpson (Sup.) 17 S. W. 788.

[20] The objections to the admissibility of the deed upon which this assignment is based were general, and, if it was admissible as the deed of any of the parties upon any issue, the court correctly overruled such objections. There can be no doubt that it was admissible as the deed of those signing it themselves, other than the feme covert. See article 3700, Revised Statutes, 1911.

[21] We are also of the opinion that the certificate of acknowledgment was sufficient, except as to the married woman. Jones v. Robbins, 74 Tex. 615, 12 S. W. 824; Dorn v. Best, 15 Tex. 62; Deen v. Wills, 21 Tex. 642; Hughes v. Wright & Vaughan, 100 Tex. 511, 101 S. W. 789, 11 L. R. A. (N. S.) 643, 123 Am. St. Rep. 827.

[22] The twenty-fifth assignment complains of the admission in evidence of a deed from Ysidro Martinez to Eugenio Garcia, which attempts to convey a strip out of the Las Norias de Tio Ayala grant "beginning at the northwest corner of that portion which was conveyed to Manuel Garcia Culler by Ysidro Martinez by deed bearing —— day of ——, A. D. 18—." No deed to Culler was introduced in evidence nor shown to have been on record or even to have existed. The deed was not admissible in the absence of proof showing the location of the northwest corner of the Culler tract. Dwyre v. Speer, 8 Tex. Civ. App. 88, 27 S. W. 585; Gorham v. Settegast, 44 Tex. Civ. App. 254, 98 S. W. 665; Wofford v. McKinna, 23 Tex. 36, 76 Am. Dec. 53; McDonough v. Jefferson County, 79 Tex. 535, 15 S. W. 490; Noland v. Weems, 141 S. W. 1036. Appellee cites the case of Club Land & Cattle Co. v. Wall, 99 Tex. 596, 91 S. W. 778, 122 Am. St. Rep. 666, in support of his contention that the description in the deed is sufficient. As is shown by the opinion of the Court of Civil Appeals in said case (88 S. W. 535), the description of the deeds therein discussed could be made certain as to beginning point by a simple calculation; and, while the opinion of the Supreme Court gives no importance to that fact and might be construed as an expression of opinion that a deed calling for a certain number of acres out of a given survey to begin at a certain corner of another subdivision of the survey conveyed in a certain deed not recorded was sufficient to sustain the five years' limitation, yet if such be the holding we are of the opinion that there must have been some proof showing the location of the beginning corner. In this case no proof was offered showing that the beginning corner could be located. Appellees say the grantee in the deed now being considered, when he conveyed to D. R. Fant, described the land as beginning at a corner of a tract conveyed by a previously recorded deed from Ysidro Martinez to Rafael G. Garcia. There is no proof that Rafael G. Garcia was ever known as Manuel Garcia Culler, nor that Ysidro Martinez had in fact made no deed to Manuel Garcia Culler. Apparently Eugenio Garcia, finding no such deed on record, when he sold, tied his parcel to the portion conveyed by Ysidro Martinez to Rafael G. Garcia. We do not think this fact, unaccompanied by explanation, can be held to make any more certain the description in the deed now being considered. The assignment is sustained.

[23] The twenty-sixth, twenty-ninth, and thirty-seventh assignments complain of the introduction in evidence of deeds containing a description reading as follows: "All that right, title and interest which we possess in and to a certain two-league tract of land lying and being situated in the county of Hidalgo, Texas, originally granted by the crown of Spain in Mexico to Esteven Martinez and subsequently patented by the state of Texas to said original grantee or his heirs; that said land herein intended to be conveyed are undivided and are sixty varas front and running back two leagues for quantity and were acquired by said Alifonsa Martinez de Ramon from her deceased father, Casimiro Martinez, who is a legitimate child of the original grantee." We are not apprised by these deeds what two leagues out of the Tio Ayala grant are meant but are informed that the interest sought to be conveyed is undivided and that it is 60 varas by two leagues, making an acreage of approximately 106.28 acres. If the two leagues had been identified, we think these deeds should be construed as conveying an undivided interest of 106.28 acres therein. However, as the two-league tract is not identified, we think the description is so uncertain as to make the deeds void and sustain the assignments of error.

Assignment 27 complains of the admission in evidence of a deed on the ground of defective certificate of acknowledgment. This deed was made admissible by article 3700, Rev. Stats. of 1911.

[24] The twenty-eighth assignment complains of the admission of a certified copy of a deed from Maria Anastacia Martinez de Gutierrez to Ysidro Martinez, dated January 15, 1873, acknowledged August 18, 1891, recorded November 20, 1891, over the objection that it appears to have been acknowledged before a person not authorized to take acknowledgments of the execution of deeds. As the deed was on record for more than ten years, without any claim adverse or inconsistent to the one evidenced by such instrument having been asserted within that time, such copy was admissible in evidence under the provisions of article 3700, Revised Statutes of 1911. Bledsoe v. Haney, 57 Tex. Civ. App. 285, 122 S. W. 455, s. c., 139 S. W. 612.

Assignments Nos. 30, 31, 32, 33, 34, 35, 36, 38, 39, 40, 41, 42, 43, 44, and 45 are overruled.

[25] Some of the instruments mentioned in assignments 27, 28, 30 to 45 were admissible on the issue of title by three years' limitation, others on the issue of title by five years' limitation. The objections made were general, and appellant was not entitled to have them excluded but to have their consideration limited to the issue upon which they were respectively admissible.

The forty-seventh and fifty-ninth assignments are overruled.

The forty-eighth and forty-ninth assignments are sustained.

By cross-assignments Nos. 1, 7, 8, 9, 10, and 11 appellees attack the admission in evidence

of the copy of a copy of the "expediente" issued to Esteven Martinez, the copy of deed of sale to Antonio Martinez from Esteven Martinez (whose name is not signed thereto but the same purports to be signed in his behalf by Jose Manuel Rodriguez), copies of deeds from Antonio Martinez to French Strother and from Strother to Gourlay & Jewett, and the testimony of the witness Thad Smith, who testified to the correctness of the copies as compared with instruments he was shown in the "municipal palaces" at Camargo and Matamoros.

[26, 27] We are of the opinion that the copy of a copy of the "expediente" was not admissible, but the error is harmless because appellees introduced in evidence a copy of the judgment of the district court of Travis county in the case of Ysidro Martinez et al. v. State of Texas, establishing that Esteven Martinez was the original grantee of the Las Norias de Tio Ayala survey of land, which judgment was procured under an act permitting suit to be brought to establish the existence of grants by the Mexican government of lands between the Nueces and Rio Grande rivers. The other instruments are copies of instruments in the custody of certain officials at Camargo and Matamoros, and there is no proof of the genuineness of any of the signatures to such instruments. The evidence shows that they were found by Smith in bundles purporting to contain instruments executed during a series of years, including the alleged dates of such instruments, and they appeared old and the signatures to be in different handwritings. He found these instruments in the "municipal palace" to which he was directed as the place where records were kept; he was introduced to the officials who claimed to have charge of the records and they showed him the instruments he asked for. Judge Bliss testified that in Mexico the public instruments were kept in the archives of the municipality and that the archive keeper was the secretary of the municipality. Such being the case, the deeds from Antonio Martinez to Strother and from Strother to Gourlay & Jewett being executed before a notary public in the city of Matamoros, the originals would be properly archived in the municipal palace of that city. The purported deed of sale to Antonio Martinez from Esteven Martinez does not show on its face what official position Coyetano Lopez, the person who certified thereto, held, unless the following recitation be sufficient: "And, in order that it may have all the force that the interested party may wish it to have, the present deed of sale is drawn up, which the citizen, Manuel Rodriguez, signed at his request, because he did not know how, before the judge and those of my assistance, with whom I act because there is no clerk with the requisites designated by law." In the absence of proof to show what office Lopez held it may be that the evidence is insufficient to show that this instrument is prop-

erly authenticated or properly archived at Camargo.

[28] However, taking it for granted that the evidence is sufficient to show that these instruments, if genuine, would have been archived where found by Smith, our courts have required some extrinsic evidence of the genuineness of the instrument before copies may be introduced in evidence. Where an original instrument is properly archived in the county clerk's office or in the General Land Office, a certified copy is admissible, but, when archived in a foreign country, this rule does not apply. Chief Justice Wheeler, in the case of Word v. McKinney, 25 Tex. 270, said: "For the present it will suffice to say that, where the original is an archive of a foreign government and there is no means of testing its genuineness or the verity of the proffered testimonio by any record or other evidence within the limits of our own jurisdiction, we think it safer to adhere to the practice which has heretofore obtained and require the production of some extrinsic evidence of the execution or genuineness of the instrument."

In the case of State v. Cardinas, 47 Tex. 291, Chief Justice Roberts said: "It is true, by the uniform decisions of this court, when a testimonio, which is an original copy issued contemporaneously with the making of the protocol and is the evidence of title given to the grantee, is offered in evidence, it is required to be accompanied with some evidence of its genuineness from which it might follow that a second copy, issued and certified to at a later date by the keeper of the archives, or a sworn copy from the original archives, might likewise be accompanied with some such confirmatory evidence of the genuineness of the grant, the exact amount or character of which has not been laid down by our decisions, but must, from the very nature of the case, be left to be determined as the cases requiring it may be presented."

In the case of Schunior v. Russell, 83 Tex. 96, 18 S. W. 484, it is held that, when an instrument is so old as to render direct evidence of its execution improbable, the party may show its execution by circumstances, and named long possession under it, payment of taxes upon the land, and marks of age upon the paper itself as circumstances which may be looked to.

The question what constitutes sufficient proof of the execution of instruments like those now being considered, in order to admit examined copies in evidence, is one of extreme difficulty. Too strict a rule may work great hardships, and on the other hand too lenient a rule may give effect to instruments never executed by the parties.

[29] It occurs to us that in this case, as in the Schunior v. Russell, if the instruments be genuine, some better evidence of authenticity can be produced, and there having never been any possession under the instru-

ments, nor payment of taxes by any of the persons to whom such instruments purport to convey land, nor any proof of the genuineness of any of the signatures, although one on each instrument purports to be that of a public official, and in fact no evidence except that the instruments looked old to Smith, and the signatures to be in different handwritings, and such instruments were taken out of bundles of old instruments covering the years of their supposed execution, which bundles were in the municipal palaces of the cities in which the instruments purport to have been executed, we hold that the execution of such instruments was not sufficiently proven to entitle copies to be admitted in evidence.

[30] The fourth proposition under said assignments of error and the sixth assignment of error relate to rulings on the defense set up by appellees that Fant was an innocent purchaser for value. It appears the court instructed the jury not to consider the recitals, as to payment of purchase price, in any of the deeds under which defendants claimed as any evidence that the same was paid. The instruction is incorrect because calculated to impress the jury with the idea that the recitals could not be considered at all. Our cases hold that such recitals alone are not sufficient to prove the payment, but they may be considered in connection with other circumstances, as payment may be shown by circumstantial evidence. See Davidson v. Ryle, 103 Tex. 216, 124 S. W. 616, 125 S. W. 881, in which case proof of payment resting upon circumstantial evidence alone was upheld as sufficient. Appellees apparently did not ask that the questions of payment and notice be submitted to the jury but requested an instructed verdict upon the theory that, having bought from the patentees holding under patent from the state of Texas and not the original grantee to whom the grant was issued by Mexico, the burden rested upon appellants to show that appellees had notice or did not pay value, and further that under such circumstances the recitals would be sufficient proof of payment of the money.

[31] That the burden of proof does not shift from the persons claiming by reason of a purchase for value without notice is well settled in this state. Rogers v. Pettus, 80 Tex. 425, 15 S. W. 1093; Turner v. Cochran, 94 Tex. 480, 61 S. W. 923; Ryle v. Davidson, 102 Tex. 233, 115 S. W. 28; Davidson v. Ryle, supra. From such examination as we have made of the cases in this state, we conclude that the recitals alone do not prove payment, even though made as in this case by persons who had made no previous deed for the same land.

[32] Under the second and third cross-assignments, it is contended that the possession held by D. Sullivan & Co., even after repudiation of the trust relation by them, would inure to and be the possession of the beneficiary and be counted as such under our limitation statutes because by suit it was established that such possession was obtained and held as trustee and the land adjudged to the cestui que trust. We sustain the assignments. Coyle v. Franklin, 54 Fed. 644, 4 C. C. A. 538; Clark v. Clark, 21 Neb. 402, 32 N. W. 157; Mattfeld v. Huntington, 17 Tex. Civ. App. 716, 43 S. W. 53.

By the fifth cross-assignment complaint is made because the court refused to submit to the jury a special issue relating to the defense of limitation under the three years' statute.

[33] The court did not err in refusing to submit the issue as requested, because it was not for the jury to decide whether title or color of title had been shown. However, we are of the opinion that the issue of three years' limitation was in the case to the extent to which defendants had shown title or color of title under the heirs of Esteven Martinez. The views of the court expressed in the case of Sabine Valley T. & L. Co. v. Cagle, 149 S. W. 697, appeal to us as correct. Said case is now pending in the Supreme Court upon a writ of error granted, as we are informed, upon the allegation that the opinion of the Court of Civil Appeals practically settles the case.